IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00047-MSK-MEH

CHEVRON CORPORATION,

    Petitioner,

v.

STRATUS CONSULTING, INC.,
DAVID J. CHAPMAN,
DOUGLAS BELTMAN,
JENNIFER M.H. PEERS,
DAVID M. MILLS,
PETER N. JONES,
LAURA BELANGER, and
ANN S. MAEST,

    Respondents.

REPUBLIC OF ECUADOR, *et al.*,

    Interested Parties.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Petitioner Chevron's Motion to Compel Production of Electronically Stored Information from Stratus Consulting, Inc. [filed July 9, 2010; docket #193], Petitioner Chevron's Emergency Motion for Expedited Order Compelling the Production of Communications . . . [filed August 5, 2010; docket #205], and Petitioner Chevron's Motion to Expedite Ruling . . . [filed August 30, 2010; docket #225]. These matters are referred to this Court for disposition. (Dockets ##197, 209, 226.) The motions are briefed to the extent necessary and oral argument would not assist the Court in its adjudication. For the reasons stated below, the Court **GRANTS** the Motion to Compel, **DENIES** the Emergency Motion for Expedited Order, and

**DENIES AS MOOT IN PART** and **DEFERS RULING IN PART** on the Motion to Expedite Ruling. The Court first addresses the Emergency Motion.

I.   **Petitioner's Emergency Motion**

In this motion, Petitioner requests the Court to expedite the schedule for the Ecuadorian Plaintiffs' production of documents in response to the Section 1782 subpoenas. Petitioner premises this request on its interpretation of an order issued by the Ecuadorian court in Lago Agrio, which governs the primary proceeding at issue. Petitioner asserts that the present schedule for production is prejudicial because the Lago Agrio court "issued an order, at Plaintiffs' request, directing the parties to file within 45 days—by September 16, 2010—submissions 'setting forth and justifying their positions . . . with respect to the economic and applicable criteria for remediation of environmental damages,' which relates directly to the discovery sought here." (Docket #205 at 2.) In a footnote, Petitioner represents that it has filed a petition with the Lago Agrio court seeking revocation of the order setting the 45-day deadline.[1] (*Id*. at 8, n.4.)

In response, the Ecuadorian Plaintiffs contend that the Lago Agrio court's order actually "enlarges the time for both parties to make their own damages submissions based on the evidence." (Docket #216 at 4.) The Plaintiffs describe how they submitted this request to the Lago Agrio court "to extend the case to permit both parties to file new damages submissions. . . . One reason for these new submissions was to address Chevron's complaints against Mr. Cabrera." (*Id*. at 5.) The Ecuadorian Plaintiffs allege the Lago Agrio order allows Petitioner Chevron to submit its own supplemental submission on damages "based on a massive seven-year trial record already in evidence," which does not implicate obtaining discovery from the Plaintiffs' self-described

---

[1]Petitioner's reply generally restates the reasoning articulated in its motion. (*See* docket #218.)

consulting experts. (*Id*. at 18-19.)

The Court, having reviewed the Lago Agrio court's order relied upon by Petitioner in bringing this request, agrees more with the Ecuadorian Plaintiffs' construction of the order. The order, as translated, described how the Lago Agrio court has reviewed the motions on the record in that matter related to Mr. Cabrera's expert assessment and perceived the "dissatisfaction" with Mr. Cabrera's expert report and with the expiration of Mr. Cabrera's appointment. (Docket #207-1 at 2.) The Lago Agrio court explained that it "is not required to abide by the opinion of the experts." (*Id*.) Thus, the court, "in order . . . to receive further enlightenment and illustration and additional elements for judgment," instructed the parties to file a brief within forty-five days of the order, dated August 2, 2010, setting forth their positions "with respect to the economic and applicable criteria for remediation of environmental damages, without this in any way implying any confession or implicit admission by the parties to the case, nor that the court has jumped to any conclusion as to the existence of any damage." (*Id*. at 2, 3.)

The Court does not interpret this order to indicate any expedited process in the Lago Agrio proceeding, nor does this Court perceive the relevance of the discovery sought by Petitioner through the Section 1782 subpoenas to the information requested by the Lago Agrio court. The evidence sought by Petitioner in this proceeding, as frequently explained, is purposed to expose Mr. Cabrera as producing a plagiarized damages report to the Lago Agrio court, arising from allegedly inappropriate communications with the named Respondents. The Court perceives no relevance of this discovery, related to the exposure of Mr. Cabrera's alleged fraudulent activity, to Petitioner's *own* damages assessment submitted in Ecuador. Thus, the Court does not believe that Petitioner establishes good cause for modification of the production schedule and **DENIES** Petitioner's Emergency Motion. The deadline for complete document production and production of any

3

privilege log in total and the briefing schedule to challenge any withholdings remain set as stated in the July 2, 2010 order, located at docket #191.

**II.     Petitioner's Motion to Compel**

*A.     Background*

Petitioner requests the Court to compel the Stratus Respondents "to produce responsive electronic documents in their native format with metadata intact." (Docket #193 at 1.) Petitioner alleges that "the authorship, timing and origin of key documents are directly at issue," thus case law and Rule 34 indicate that production of electronic documents must include metadata. (*Id*. at 2.) Petitioner represents that the Stratus respondents have converted all documents from their native format to .pdf files. (*Id*.) Petitioner contends that the .pdf conversion deems the files less useable in violation of Rule 34. (*Id*. at 14.)

In response, the Stratus Respondents assert that Petitioner failed to designate the preferred format of electronic documents in the Section 1782 subpoenas. Respondents argue that the language in the subpoenas "defines what constitutes a 'document' for purposes of the search, and specifies the order in which the located documents are to be produced (as maintained rather than chronological or otherwise)." (Docket #204 at 4.) Respondents aver that Rule 34 and interpretive case law indicate that native format with metadata intact is not an automatic requirement; what is required is that the electronic documents produced must be produced in a reasonably usable form. (*Id*. at 5.) Respondents believe that the searchable .pdf files constitute a "reasonably usable form." (*Id*. at 7.) Moreover, Respondents state that they could not produce the documents in "native format" because "native format" files cannot be Bates-stamped, as requested by Petitioner and ordered by the Court. Respondents explain that the conversion of electronically stored data to .pdf allows the documents to be Bates-stamped before production to the Ecuadorian Plaintiffs and in turn,

4

Petitioner. (*Id.*)

In reply, Petitioner maintains its position that Respondents deliberately modified the produced electronically stored documents from their ordinary native format to .pdf. (Docket #217 at 3.) Petitioner asserts that the case law relied upon by Respondents is applicable for the proposition that authorship and editing of electronic documents may not be probative in certain cases, and "[n]one of those cases involved litigation consultants for a party clandestinely ghostwriting a multi-billion-dollar damages report. . . ." (*Id.*) Additionally, Petitioner argues that Respondents' claim of burden lacks merit because "Chevron is currently bearing the costs of Stratus's production." (*Id.* at 4.)

For the following reasons, the Court agrees with Petitioner.

### B.     *Discussion*

Fed. R. Civ. P. 34 governs the production of electronically stored information. Rule 34(b)(2)(E) establishes the proper procedure for production, providing in pertinent part:

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
> (iii) A party need not produce the same electronically stored information in more than one form.

The Section 1782 subpoenas issued to Respondents define "DOCUMENT" as "all communications in a tangible form, however produced, reproduced, or stored on any electronic media . . . ." (Docket #5-1 at 5.) The subpoenas explain that "the DOCUMENTS requested are to be produced in the same order as maintained in the ordinary course of business." (*Id.* at 10.)

The case law regarding metadata is somewhat limited in this district; thus, the Court looks to other districts' holdings as persuasive. Respondents oppose Petitioner's motion primarily because

5

the subpoenas did not request the production of electronic documents in any specified form. In the absence of specificity, Respondents argue that the production may be in a reasonably usable form, and searchable .pdf formatting satisfies the "reasonably usable" requirement. (*See* docket #204 at 2.) Respondents rely on the Southern District of New York's conclusions in *Aguilar v. Immigration & Customs Enforcement* for the proposition that, for Petitioner to receive the documentation requested with metadata intact, Petitioner had to have made that precise request up front. 255 F.R.D. 350, 357 (S.D.N.Y. 2008). Notably, the *Aguilar* Court premised its decision on the considerable delay of the request for metadata and the perceived usefulness of producing the metadata beyond the value of the information already obtained. 255 F.R.D. at 360. The *Aguilar* Court determined that the metadata sought was, "at best, marginally relevant," and granted the request for production of metadata with the condition that the requesting party would bear the cost. *Id*. at 361-62.

Regarding the contention that searchable .pdf is a reasonably usable format, Petitioner asserts that "[w]hat form is reasonably usable depends on the issues in the case and the purpose for the discovery is being sought." (Docket #217 at 9 (citing *The Sedona Principles* 2d, at ii).) The Court agrees, and the Court accepts Petitioner's argument that, due to the nature of the allegations in this Section 1782 proceeding, Respondents were on notice that authorship and other subsumed details of the electronic documents requested would be at issue.

Petitioner utilizes the District of Kansas' analysis in *White v. Graceland College Center for Professional Development* in support of its argument that "a party's 'conversion of the emails and attachments to PDF documents' does not satisfy the obligation to provide documents in a 'reasonably usable' format," particularly when "the date of the creation or authorship of documents is a 'critical issue in the case.'" (*Id*. (citing 586 F. Supp. 2d 1250, 1264 (D. Kan. 2008)).) The Court finds *White*, rather than *Aguilar*, more applicable in this matter. In *White*, the plaintiff seeking

metadata alleged that without the metadata, she would be unable to confirm or contradict the timing that the documents were authored, and timing was a critical issue in that matter concerning the termination of plaintiff's employment.  586 F. Supp. 2d at 1264.  Furthermore, as the truthfulness of the defendants' actions was at issue, the plaintiff contended the metadata was required to demonstrate "that, when prepared, the documents said what they say now."  *Id*.  The *White* Court stated,

> [d]efendants' option to produce in a reasonably usable form does not mean that they are free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for Plaintiff to use the information efficiently in the litigation."

*Id*.  Similarly here, production of documents without metadata intact does make it more difficult for Petitioner to use the information efficiently, as Petitioner's Section 1782 petition rests on allegations of fraudulent activity between Respondents and a court-appointed expert in Lago Agrio.  Petitioner believes, and the Court (or Respondents) cannot contradict, that access to metadata may "demonstrate definitively the authorship, development, and drafting" of the electronic documents at issue.

In sum, the Court concludes that, in light of the allegations in this matter, the metadata underlying the electronic documents could be probative.  However, the Court recognizes that the language in the subpoenas is less than clear regarding the format requested by Petitioner, and also that the request for Bates-stamping may contradict the described technological realities of electronic document production inclusive of metadata.  The Court believes that Respondents' claim that re-production would be an undue burden carries legitimacy; however, the Court concludes this issue is remedied by Petitioner footing the bill.  Accordingly, the Court orders as follows.  The electronically stored information produced by Respondents in the past and future shall be produced

in native format with intact metadata, shall be Bates-stamped only as technologically possible, and Petitioner will pay for the re-production and future production.  Petitioner's Motion to Compel is hereby **GRANTED**.  Respondents shall complete re-production of electronically stored documents already produced within *fourteen days* of this order.

### III. Petitioner's Motion to Expedite

To the extent Petitioner's motion seeks an order on its Emergency Motion and Motion to Compel, the motion is **DENIED AS MOOT**.  Petitioner's motion also requests the Court to order the depositions of Respondents Maest and Beltman on September 13 and 14, in addition to the deposition of Respondent Peers already set for September 10.  (Docket #225 at 4.)  The Court **DEFERS RULING** on this request and instructs Respondents (and the Ecuadorian Plaintiffs) to respond, addressing the *narrow* issue of deposing Respondents Maest and Beltman on September 13 and 14, at or before the *close of business* on **September 3, 2010**.

SO ORDERED.

Dated at Denver, Colorado, this 31st day of August, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge