IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00047-MSK-MEH

CHEVRON CORPORATION,

      Petitioner,

v.

STRATUS CONSULTING, INC.,
DAVID J. CHAPMAN,
DOUGLAS BELTMAN,
JENNIFER M.H. PEERS,
DAVID M. MILLS,
PETER N. JONES,
LAURA BELANGER, and
ANN S. MAEST,

      Respondents.

REPUBLIC OF ECUADOR, *et al.*,

      Interested Parties.

---

## ORDER GRANTING PETITIONER'S MOTION TO COMPEL

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Pending before the Court is Petitioner Chevron Corporation's Motion to Compel Production of All Responsive Documents Withheld [filed September 20, 2010; docket #232]. This matter is referred to this Court for disposition. (Docket #240.) The motion is briefed, and oral argument would not assist the Court in its adjudication. For the reasons stated below, the Court **GRANTS** the Motion to Compel.

# BACKGROUND

## I.     Factual and Procedural History

Petitioner filed its Section 1782 petition *ex parte* on December 18, 2009.  (*See* docket #1.)  Petitioner challenges the integrity of an expert report in an Ecuadorian court proceeding involving Petitioner and the Interested Parties (hereinafter referred to as "Ecuadorian Plaintiffs" or "Plaintiffs"), authored by Mr. Cabrera, a court-appointed expert.  Petitioner believes Mr. Cabrera plagiarized portions of his report through impermissible reliance on the Ecuadorian Plaintiffs' retained experts,[1] who are identified as the respondents in this matter.  Thus, Petitioner seeks discovery from the experts purposed to expose any alleged wrongdoing in the authoring of Mr. Cabrera's report.

At a hearing on the petition conducted by Judge Kane on March 4, 2010, Judge Kane granted Petitioner's request and ordered the issuance of the eight subpoenas as proposed by Petitioner, without modification.  (*See* docket #22.)  Counsel for Petitioner and the Ecuadorian Plaintiffs were present at the hearing.  (*Id*. at 2.)  Judge Kane established a time frame for the Ecuadorian Plaintiffs to oppose the issuance of the subpoenas, but the Plaintiffs did not do so.  (*See* docket #154 for further discussion.)  Instead, the Ecuadorian Plaintiffs filed a motion for protective order which *de facto* sought to completely quash the subpoenas.  (Docket #68.)  This Court found that the motion was filed out of time, implicating undue delay and potential prejudice, and declined to reconsider the issuance of the subpoenas by Judge Kane.  (*Id*.)  Upon a motion for clarification, the Court explained that the responding parties may still engage in the standard process of production, which may necessitate the use of a privilege log to record narrowly focused good-faith assertions of privilege, but warned the Plaintiffs against an abuse of

---

[1]Whether the respondent experts are consulting (nontestifying) or testifying is a matter of dispute, further explained and analyzed below.

this review process by trying to reassert a blanket privilege, which the Court denied in its adjudication of Plaintiffs' motion for protective order. (Docket #161 at 3.)

On July 2, 2010, the Court set the schedule for rolling production of documents coupled with a contemporaneous privilege review. (*See* docket #191.) Production to Petitioner was to be completed by September 15, 2010. Any challenge by Petitioner to an assertion of privilege by the Plaintiffs was to be filed by September 20, 2010, followed by a response and reply. Furthermore, the Court ordered that all depositions related to this proceeding must be completed before October 20, 2010. (*Id*.)

Petitioner filed the motion at hand on September 20, 2010, as ordered. (*See* docket #232.) On September 23, 2010, the Ecuadorian Plaintiffs alerted this Court that the Ecuadorian court had issued "a call for final arguments (*autos para sentencia*) in the Lago Agrio proceeding." (Docket #242 at 2.) The Court convened a status conference the following day, to discuss the briefing of this motion to compel and the completion of depositions, in light of the pending final order by the Ecuadorian court. (*See* docket #246.) The Court expedited the briefing of this motion further, in order to accommodate the parties' scheduling of depositions commencing the week of October 4, 2010. (*Id*.)

## II.    Present Motion

Petitioner brings this motion to compel requesting the Court to order the full disclosure and production of all documents responsive to the subpoenas issued by Judge Kane last March. Petitioner recounts the evidence it relies upon for its contention that the Stratus respondents "both directly and through the use of subcontractors – wrote substantially all of 'Cabrera's' report, and that their December 2008 'Comments' were a fraud." (Docket #232 at 1.) Petitioner seeks production of all withheld responsive documents and alleges "none of the documents

provided to Cabrera, none of [Stratus'] work that became the Cabrera report, and none of the documents relating to its start-to-finish creation of Cabrera's fraudulent 'damages assessment'" have been produced, to the tune of 2,500 responsive documents. (*Id*. at 2.) Petitioner challenges the Plaintiffs' assertions of privilege on the basis of five arguments: 1) waiver due to unjustifiable delay in asserting privilege; 2) disclosure of documents to Cabrera and his team waives any assertion of privilege; 3) waiver on the basis of fairness in light of the sword-shield doctrine; 4) waiver on the basis of the crime-fraud exception to work product protections; and 5) as to Stratus specifically, "failure to produce, log, or indicate as destroyed a number of key responsive documents." (*Id*. at 19-20.)

In response, the Ecuadorian Plaintiffs describe to the Court the factual foundation for their lawsuit against Petitioner Chevron in Ecuador. (*See* docket #250.) The Plaintiffs allege that Petitioner committed the same conduct it now challenges as fraud, in that "Chevron's private expert, John A. Connor, ghostwrote part of the report of a different independent, neutral court expert in Lago Agrio: Mr. Barros." (*Id*. at 21.) Plaintiffs minimize Petitioner's concern regarding the damages report prepared by Mr. Cabrera, due to the volume of the record in the Lago Agrio trial proceeding, which began in 2003. (*Id*. at 18-19.) Plaintiffs rely heavily on the provisions of Ecuadorian procedure and law through their response. Plaintiffs argue that Petitioner's motion should be denied because: 1) Petitioner does not specifically challenge any assertion of privilege, but improperly demands full production; 2) the documents Petitioner seeks are protected by the work product doctrine, because the Stratus respondents are Plaintiffs' consulting experts, not testifying experts; 3) disclosure of documents to Cabrera and his team does not constitute waiver (and in any event, waiver would apply only to documents actually disclosed); 4) the documents sought by Petitioner exceed the bounds set by Judge Kane's

original order; and 5) Petitioner fails to meet its burden in establishing the crime-fraud exception. (*See id.* at 34-61.)

Petitioner couches the factual background provided by the Plaintiffs as "baseless and irrelevant" in its reply. (Docket #254 at 3.) Petitioner reemphasizes its belief that Plaintiffs flout this Court and Judge Kane's previous orders by asserting a de facto blanket privilege at this later stage of the present discovery proceeding, evidenced by the 720-page privilege log. (*Id.* at 8.) Petitioner argues that Plaintiffs have burdened the Court and the proceeding "by asserting as privileged or work product essentially every responsive document that Stratus did not disclose to the media, public institutions, or other third parties (other than Cabrera)," without carrying their own burden of establishing the elements of the privileges they believe apply. (*Id.* at 10.) Petitioner restates its arguments that both Cabrera and the Stratus respondents are considered testifiers, and fundamental fairness requires ordering full disclosure under the sword-shield doctrine. (*Id.* at 12-15.) Additionally, Petitioner restates its belief that the crime-fraud exception applies. (*Id.* at 16-24.)

The Stratus respondents also filed a response to Petitioner's motion. (*See* docket #249.) Stratus takes no position on the issue of privilege but contests Petitioner's allegations that it has improperly withheld documents or impermissibly failed to respond to certain document requests, namely: 1) "any work plan or drafts of a work plan in 2007;" 2) "notes that Ann Maest is seen taking during the March 4, 2007 lunch meeting with Donziger;" and 3) "April 22, 2007 memorandum from Donziger regarding damages categories . . . ." (*Id.* at 3-4.) Stratus attests it is unaware of any document regarding a 2007 work plan. (*Id.* at 4.) Stratus avers it produced any notes made by Ms. Maest to Plaintiffs for privilege review. (*Id.*) Stratus represents it conducted a diligent search but did not find any version of an April 22, 2007 memo from Mr.

Donziger.  (*Id*. at 5.)  Regarding certain databases demanded by Petitioner, Stratus again states that "all materials responsive to the subpoenas contained in any database have been turned over to Plaintiff's counsel for privilege review."  (*Id*. at 6.)  Petitioner construes Stratus' response as indicative that Stratus may not have collected all responsive documents, because Petitioner discovered the omission of these documents on its own.  (Docket #254 at 27-28.)

## III.    Requests within the Issued Subpoenas

Petitioner subpoenaed the following categories of documents to be produced by Stratus (docket #5-1 at 10-12):

1.    All documents relating to any communication between (1) Stratus and (2) Cabrera or any person that contributed to the Cabrera Reports.

2.    All documents relating to any communication between (1) Plaintiffs' Lawyers or any Plaintiff Affiliated Person and (2) Cabrera or any person that contributed to the Cabrera Reports.

3.    All documents relating to any communication between (1) Stratus and (2) Plaintiffs' Lawyers or any Plaintiff Affiliated Person relating to the Cabrera Reports or to any work provided to Cabrera.

4.    All documents identifying persons that contributed to the Cabrera Reports.

5.    All documents relating to any work by Stratus (1) contributing to the Cabrera Reports or (2) provided to Cabrera, or (3) relating to any involvement of Stratus in work used in the Cabrera Reports.

6.    All documents relating to Annex M, O, or R of the Cabrera Reports.

7.    All documents relating to the translation of any Stratus work into Spanish.

8.    All documents relating to Stratus contract #S063-8H-1303.

9.    All documents relating to any compensation Stratus received for work relating to the Cabrera Reports.

10.    All documents relating to any compensation Cabrera received for the Cabrera Reports.

11.    All documents relating to the Stratus comments or the Stratus summary.

12. All documents relating to retention and destruction of records by Stratus relating to the Lago Agrio litigation, including electronic records and backup tapes, discs, drives, or files.

13. All documents identifying any person retained by Stratus to perform work relating to the Lago Agrio litigation.

14. All contracts and agreements between Stratus and any person retained by Stratus to perform work relating to the Lago Agrio litigation.

15. All documents relating to Richard W. Clapp or the Clapp Article.

Petitioner subpoenaed the following categories of documents to be produced by the seven individually named respondents (docket #5-1 at 12-13):

1. All documents responsive to any of the requests for production propounded to Stratus that have not been previously produced by Stratus.

2. All documents relating to any communication between you and Cabrera.

3. All documents relating to any communication between you and any person that contributed to the Cabrera Reports.

4. All documents relating to any communication between you and any person or entity that relates, refers, or pertains to the Cabrera Reports.

5. All documents relating to any communication between you and Plaintiffs' lawyers relating to the Cabrera Reports or to any work provided to Cabrera.

6. All documents relating to any communication between you and Frente de Defensa de la Amazonia.

7. All documents that were reviewed, considered, or relied upon by you in performing any work relating to the Cabrera Reports.

## DISCUSSION

### I. Choice of Law

Plaintiffs rely on Ecuadorian practice and procedure for a large part of their argument regarding application and waiver of privilege. Petitioner contests this reliance, and the Court

agrees that federal law is the proper law to apply. Petitioner brings this discovery proceeding pursuant to Section 1782 of 28 U.S.C. Section 1782(a) in pertinent part states,

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

> A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

Because the jurisdictional basis of the proceeding is a federal statute, federal common law governs Plaintiffs' assertions of attorney-client privilege. *See* Fed. R. Evid. 501. *See also In re Federation Internationale de Basketball*, 117 F. Supp. 2d 403, 407 (S.D.N.Y. 2000) (concluding federal privilege law controls questions of privilege raised in Section 1782 proceedings). "Unlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier Refining Inc. v. Gorman-Rupp Company, Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (internal quotation omitted).

In *Intel Corp. v. Advanced Micro Devices, Inc.*, the preeminent case on Section 1782 proceedings, the Supreme Court rejected the suggestion that a Section 1782 petitioner "must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." 524 U.S. 241, 263 (2004). The Supreme Court warned against United States courts engaging in a comparative analysis to determine whether analogous proceedings in the foreign jurisdiction exist; the Court advised, "[c]omparisons of that order can be fraught with

danger." *Id*. This Court believes the flip side is also true. This Court is in no position to presume applying the law of a foreign jurisdiction without its own competent knowledge of such legal system, and principles of comity between sovereign entities require such philosophy. The Court is aware of the Fifth Circuit's conclusion that "the legislative history of §1782(a) suggests that parties may rely on foreign privileges to shield information from discovery in the United States," however, under these circumstances this Court believes that the Lago Agrio court is in the best position to place conditions on its acceptance of the information presented.[2] *Ecuadorian Plaintiffs v. Chevron Corp.*, No. 10-20389, 2010 WL 3491534, at *3 (5th Cir. 2010). *See also Intel Corp.*, 524 U.S. at 262. The Court concludes federal law governs its adjudication of this motion to compel.

As an additional preliminary matter, and consistent with the Court's evaluation of the choice of law issue above, the Court intends to avoid any analysis of the merits of the underlying litigation, including whether Petitioner contaminated the Ecuadorian Amazon as argued by Plaintiffs or whether Mr. Cabrera defrauded the Ecuadorian court, as averred by Petitioner (also recognizing that Petitioner relies on the allegations of fraud as a basis for precluding privilege, further discussed below). The Court, in this order, restricts its adjudication to the legal issues of privilege in this discovery proceeding, without intruding into the merits that are committed to the jurisdiction of the Ecuadorian trial court.

---

[2] Notably, the Fifth Circuit also rejected the Plaintiffs' attempt to apply Ecuadorian law to a parallel discovery proceeding. The Fifth Circuit held that Plaintiffs failed to provide "any 'judicial, executive or legislative declaration' that clearly demonstrates that allowing discovery in this case would offend Ecuadorian judicial norms." 2010 WL 3491534 at *3 (citation omitted). The Fifth Circuit explained that "the most applicable evidence directly contradicts the plaintiffs' claim that Ecuadorian law establishes a privilege in these circumstances, as the Ecuadorian court ordered Cabrera to release to Chevron 'all the documents that serve[d] as support or a source of information' for his report." *Id*.

## II.    Legal Standards: Attorney-Client Privilege and Work Product Protection

As recently discussed by the Tenth Circuit in *In re Grand Jury Proceedings*, Nos. 09-2062, 09-2068, 2010 WL 3258616, at *7 (10th Cir. 2010),

> The attorney-client privilege protects "'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor." *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983) (citation omitted). "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege," *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995); rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). . . . "The burden of establishing the applicability of [the attorney-client] privilege rests on the party seeking to assert it." *In re Grand Jury Subpoena*, 697 F.2d at 279. "The party must bear the burden as to specific questions or documents, not by making a blanket claim." *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999). The privilege "must be strictly constructed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)).

The attorney-client privilege arises "(1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) unless the protection is waived." *CoorsTek, Inc. v. Reiber*, No. 08-cv-01133-KMT-CBS, 2010 WL 1332845, at *4 (D. Colo. Apr. 5, 2010) (citation omitted).

Fed. R. Civ. P. 26(b)(3) governs the work product doctrine. To be subject to the work product protection, the materials must have been prepared "in anticipation of litigation or trial; the doctrine does not protect from discovery materials prepared in the ordinary course of business." *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993). Thus, to

receive protection under the work product doctrine, the party resisting discovery "must demonstrate that the documents at issue were prepared in anticipation of litigation by or for [the party] or by or for [the party's] representative." *Wikel v. Wal-Mart Stores, Inc*., 197 F.R.D. 493, 495 (N.D. Okla. 2000). "Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like." *Martin v. Monfort, Inc*., 150 F.R.D. 172 (D. Colo. 1993). "The mere allegation of [the work product doctrine's] application is insufficient." *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 304 (D. Utah 2002). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts within the product." *Id*. at 304.

## III. Application of the Attorney-Client Privilege and the Work Product Doctrine

As described above, the Plaintiffs bear the burden of establishing the applicability of the attorney-client privilege and the work product doctrine. Petitioner contends, and the Court agrees for the reasons stated below, that Plaintiffs fail to meet this initial showing. However, in the interests of judicial efficiency and a thorough analysis, the Court proceeds to analyze whether, if such privilege and protection did in fact apply, the privilege has been waived. The Court concludes that the privilege has indeed been waived, due to disclosure to Cabrera and his team and in consideration of the sword-shield doctrine. As further explained below, the Court finds it unnecessary to decide conclusively whether the Stratus respondents are consulting or testifying experts, for purposes of this order.

Plaintiffs rely on *CoorsTek, Inc.* for the proposition that "confidential communications between a party's counsel and a non-testifying expert or consultant, hired in anticipation of litigation, are protected by the attorney-client privilege." (Docket #250 at 37 (citing *CoorsTek,*

11

*Inc.*, 2010 WL 1332845 at *4 (citations omitted)).)  However, the Court finds it notable that the *CoorsTek, Inc.* court followed this sentence with, "[t]he penultimate question is whether the third-party communication was made in confidence for the purpose of obtaining legal advice from the lawyer."  2010 WL 1332845 at *4.  Importantly, in identifying this "penultimate question," the *CoorsTek, Inc.* court cited *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y 1994) as an example of when attorney-client privilege does *not* apply, stating "outside consultants hired by defendants to conduct environmental studies were not encompassed by the attorney-client privilege where their function was not to put information gained from defendants into usable form for their attorneys to render legal advice, but rather, to collect information not obtainable directly from defendants."  *Id.*  The Court finds the situation at hand similar, in that it appears to the Court that the Stratus respondents were not hired by Plaintiffs to acquire information from Plaintiffs for the purpose of Plaintiffs' counsel rendering legal advice, but for the purpose of informing a damages assessment conducted by a court-appointed expert.

A lesser number of entries in Plaintiffs' excerpted privilege log asserts attorney-client privilege, compared with a vast majority of the entries labeled "Work Product."  (*See* docket #234-6.)  The description of the allegedly attorney-client privileged documents uses key words referring to supplying or providing "information in furtherance of provision of legal advice," and generally apply to documents exchanged between Plaintiffs' counsel and Plaintiffs' consultants (the Stratus respondents).  Petitioner represents to the Court that "Plaintiffs' 720-page log does not reflect a single communication with the purported clients."  (Docket #254 at 11.)  However, the Court discovered a few entries described as communications with Plaintiffs' representatives,

which the Court construes as "the purported clients," to use Petitioner's phrase.  (*See* docket #234-6.)

Conclusory allegations of the application of privilege included within Plaintiffs' privilege log do not carry Plaintiffs' burden of establishing the elements of the privilege, nor does Plaintiffs' conclusory assertion that the Stratus respondents are consulting experts.  Plaintiffs make no showing of how the facts in this matter satisfy the federal common law test for privilege, which is further complicated by the fact that the communications at issue, with a few exceptions evidenced by the log, generally involve counsel for Plaintiffs and the third party expert (Stratus), not the Plaintiffs themselves. *See CoorsTek, Inc.*, 2010 WL 1332845, at *4.  In their response, Plaintiffs argue protection and privilege apply due to the Stratus respondents' status as consulting experts, but fail to articulate, analyze, or prove the elements of attorney-client privilege.  Plaintiffs proceed directly to an attack on Petitioner's assertion of waiver but offer nothing more than conclusory statements that the work product doctrine (and attorney-client privilege) precludes disclosure, as Stratus (and in turn, the individually named respondents) is a consulting expert to Plaintiffs and is thus covered by the Rule 26 work product umbrella.  Logic dictates that the Court cannot find a waiver of something that was not established in the first place.[3]

Regarding Plaintiffs' reliance on the work product doctrine, the Court believes the same is true.  As stated, Plaintiffs simply conclude that Rule 26(b)(3) provides protection over the documents at issue because the Stratus respondents (as well as Mr. Cabrera) are consulting experts, not testifying experts.  Plaintiffs then proceed directly to the waiver issue, without

---

[3]The Court finds this is particularly true in light of the *Trammel* Court's emphasis that assertions of privilege must transcend "the normally predominant principle of utilizing all rational means for ascertaining truth."  445 U.S. at 50.

further articulating, analyzing, and proving application of the work product doctrine. "A mere allegation that the work product doctrine applies is insufficient." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (citation omitted).

In any event, in this matter, the Court finds it unnecessary to determine conclusively whether the Stratus respondents are considered consultant (nontestifying) or testifying, because the result is the same: production.[4] Fed. R. Civ. P. 26(b)(3)(A) generally provides for protection of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant . . . )." However, work product protection and attorney client privilege are not absolute and can be waived. If the Stratus respondents are not testifying experts, but solely consulting experts, the Court still finds that production is warranted pursuant to waiver, further explained below.

If the Stratus respondents are considered testifying expert witnesses in light of their role in providing expertise to Mr. Cabrera, the court-appointed expert, "the majority of courts [favor] a 'bright-line' approach that mandates 'full disclosure of those materials reviewed by an expert witness."[5] *Garfinkel v. Gerbaz*, No. 08-cv-02462-RPM-LTM, 2009 WL 4611477, at *1 (D. Colo. Dec. 2, 2009) (citing *State of Oklahoma v. Tyson Foods, Inc.*, No. 05-cv-329-GKF-PJC, 2009 WL 1578937 (N.D. Okla. June 2, 2009)) (magistrate judge in this district adopting the "bright-line" approach); *see also U.S. Energy Corp. v. NUKEM, Inc.*, 163 F.R.D. 344, 348 (D.

---

[4]Interestingly, any ambiguity in the role of an expert as consulting or testifying should be resolved in favor of disclosure. *E.g., B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of N.Y., Inc.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997) ("any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery").

[5]For an explanation of the evolution of Rule 26's provisions regarding disclosure of testifying expert documentation, see *Regional Airport Authority of Lousiville v. LFG, LLC*, 460 F.3d 697, 713-15 (6th Cir. 2006) (also recognizing the "bright-line" approach as adopted by the majority of courts and holding that "Rule 26 now requires disclosure of all information provided to testifying experts").

Colo. 1995) (ordering disclosure of Plaintiff's expert's notes taken during a meeting with Plaintiff's counsel, because "a waiver of the privilege exists where counsel has delivered work product to an expert to be 'useful to the client,' but then withheld that material from an adversary seeking to exploit the fact of this assistance in cross examining the witness," consistent with the meaning of Rule 26(b)(4) (citation omitted)). Thus, the materials utilized by Stratus in making its submission to Mr. Cabrera and his team would be subject to full disclosure under the "bright-line" approach, requiring production of all information provided to testifying experts.[6]

## IV.    Waiver of the Attorney-Client Privilege and the Work Product Doctrine

"The protection provided by the work-product doctrine is not absolute, and it may be waived." *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) (citation omitted). Regarding attorney-client privilege, the *In re Qwest* court explained,

> Because confidentiality is key to the privilege, "[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party." *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990). This court has stated, "the confidentiality of communications covered by the privilege must be jealously guarded by the holder of the privilege lest it be waived. The courts will grant no greater protection to those who assert the privilege than their own precautions warrant." *Id.* (quotation and alteration omitted). This court has also held that "[c]ourts need not allow the claim of attorney-client privilege when the party claiming the privilege is attempting to utilize the privilege in a manner that is not consistent with the privilege." *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989). "Any voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege." *Id.*

450 F.3d at 1185.

---

[6]Consistent with the Fifth Circuit's determination described herein, the Court believes that Mr. Cabrera and his team do fit within the designation of "testifying expert," as their expertise is purposed for the Ecuadorian court's reliance in determining an assessment of damages, should damages be due under the Plaintiffs' theory of the case.

### A.    Waiver by Disclosure

"The work-product privilege may be waived by the voluntary release of materials otherwise protected by it." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) (quoting *e.g., Simmons, Inc. v. Bomardier, Inc.*, 221 F.R.D. 4, 8 (D.D.C. 2004)).  The Fifth Circuit, in its adjudication of a separate but related Section 1782 proceeding filed by Petitioner, agreed with the district court in that matter that any work product protection accorded to non-testifying consultants would be waived for any documents passed by the non-testifying consultants to Cabrera.  *Ecuadorian Plaintiffs v. Chevron Corp.*, No. 10-20389, 2010 WL 3491534, at *2 (5th Cir. 2010).  The Fifth Circuit opined that "[a]lthough work product immunity is not automatically waived by disclosure of protected material to third parties, disclosure does waive protection if it 'has substantially increased the opportunities for potential adversaries to obtain the information.'"  *Id*.  The Fifth Circuit concluded that because Cabrera is a testifying expert, the non-testifying consultant's disclosure (and the Plaintiffs' disclosure, following this line of reasoning) "would waive immunity from discovery under U.S. law."[7]  *Id*.

Here, the Court finds the same law and logic applies.  Mr. Cabrera is certainly a third party, and in light of the Fifth Circuit's opinion in addition to the legal analysis proffered by Petitioner in its motion (*see* docket #232 at 24-26), Mr. Cabrera's role as a court-appointed expert charged with the presentation of an expert opinion to the Ecuadorian court leads this Court to conclude waiver by disclosure applies, at least to all responsive documents actually

---

[7]Also persuasive is *Chevron Corp. v. Camp*, Nos. 1:10mc 27, 1:10mc28, 2010 WL 3418394, at *5 (W.D.N.C. Aug. 30, 2010) (unreported), determining "any consulting expert privilege assertable by Mr. Champ has been clearly waived inasmuch as it has been clearly shown that Mr. Champ became a testifying expert when he conveyed, shared, or otherwise provided his own expertise to the soon to be court appointed independent Ecuadorian expert . . . ."

disclosed.[8]  Thus, the Court finds that disclosure to Mr. Cabrera or Cabrera's team taints any work product protection that could otherwise be asserted.

Regarding attorney-client privilege, in the context of these facts, the privilege is asserted between Plaintiffs' counsel and the Stratus respondents (as non-testifying experts) and applies only to communications made in confidence for the purpose of obtaining legal advice.  As previously described, the category of documents Plaintiffs deemed protected by attorney-client privilege is minimal.  Similar to the Court's finding regarding wavier of work product protection, the Court also finds, in light of its obligation to strictly construe attorney-client privilege, that disclosure of the substance of the communications between the Stratus respondents and Plaintiffs' counsel to Mr. Cabrera and his team also waives any assertion of attorney-client privilege.[9]  *See CoorsTek, Inc.*, 2010 WL 1332845 at *6.

To briefly address Plaintiffs' contention that the work product doctrine distinguishes between fact and opinion work product, Plaintiffs failed to make such distinctions in their log, and the Court declines to do so on their behalf.  The Court finds applicable the Tenth Circuit's discussion in *Ryans* as to attorney-client privilege, establishing that "[t]he courts will grant no greater protection to those who assert the privilege than their own precautions warrant."  903 F.2d at 741 n.13.

### B.      Waiver under the Sword-Shield Doctrine

"A litigant cannot use the work product doctrine as both a sword and a shield by selectively using the privileged documents to prove a point but then invoking the privilege to

---

[8]Regarding the remaining documents Plaintiffs contend were not disclosed, the Court finds that the sword-shield doctrine compels production, as explained herein.

[9]Regarding the documents identified as communications also with Plaintiffs' representatives, the Court finds that the sword-shield doctrine compels production of these documents as well.

prevent an opponent from challenging the assertion." *Frontier Refining, Inc.*, 136 F.3d at 704. The same holds true for attorney-client privilege. "Where a party injects part of a communication as evidence, fairness demand that the opposing party be allowed to examine the whole picture . . . the attorney-client privilege cannot be used as both a sword and a shield." *Kovacs v. Hershey Co.*, No. 04-cv-01881-WYD-BNB, 2006 WL 2781591, at *6 (D. Colo. Sept. 26, 2006) (citations omitted).

Furthermore, in the same vein of thought, "waiver of the attorney client or work product privileges can occur when the privilege holder asserts a claim or affirmative defense which puts the privileged matter directly at issue." *Frazier v. Board of County Comm'rs of Arapahoe County*, No. 08-cv-02730-WYD-BNB, 2010 WL 447785, at *1 (D. Colo. Feb. 3, 2010) (citation omitted). The primary inquiry is whether the party claiming privilege will assert the allegedly protected material in aid or in furtherance of its claims or defenses.

Here, it appears to the Court to be undisputed that the communications between Plaintiffs, through their counsel, the Stratus respondents, and Mr. Cabrera and his team go directly to Plaintiffs' claim of damages against Petitioner arising out of the facts of the underlying litigation. Whether the interaction between Plaintiffs, Plaintiffs' counsel, the Stratus respondents, Mr. Cabrera, and Mr. Cabrera's team is a fraud on the Ecuadorian court under Ecuadorian standards of practice and procedure is a matter this Court leaves to the Lago Agrio court to decide. That said, this Court does find compelling Petitioner's presentations of the evidence indicating a level of direct collaboration among Plaintiffs' counsel, the Stratus respondents, Mr. Cabrera (allegedly a neutral), and Mr. Cabrera's team, without the participation of Petitioner. Hence, the Court believes that fundamental fairness precludes Plaintiffs from using communications concerning Stratus and Mr. Cabrera as a shield from production after

wielding the conclusions from disclosure of these communications as a multi-billion dollar damages sword. Waiver by disclosure to Cabrera and his team implicates production of documents disclosed; waiver pursuant to the sword-shield doctrine compels production of the remaining categories of documents (to which any privilege or protection could apply, in the first place).

In an adversarial proceeding, a process designed to reach the truth of the matter through the presentation of opposing perspectives, justice does not permit one side to inform and facilitate a damages assessment, purposed for the reliance of the court, without permitting its opponent access to the materials and process underlying the assessment. This is why, in the United States' federal system, courts require full disclosure of information relied upon by testifying experts, and philosophically and practically speaking, this Court views the matter at hand no differently.

Accordingly, the Court finds the following: 1) Plaintiffs fail to meet their burden of establishing the application of attorney-client privilege and the work product doctrine in the first instance; 2) even if Plaintiffs did meet this burden, and if the Stratus respondents are strictly consulting experts, any assertion of privilege or protection is waived by disclosure and pursuant to the sword-shield doctrine.[10] In light of these conclusions, the Court perceives no need to adjudicate Petitioner's assertion of the crime-fraud exception, which as stated above, the Court leaves to the discretion and jurisdiction of the Ecuadorian court.

---

[10]The Court finds moot Petitioner's contentions against the Stratus respondents regarding the 2007 work plan, Ms. Maest's March 4, 2007 notes, an April 22, 2007 memorandum, and the databases. The Court accepts Stratus' representations that it either does not have the documents requested or the documents requested were given to the Ecuadorian Plaintiffs for privilege review.

**V.     Production of Responsive Documents**

Plaintiffs contend that the discovery Petitioner seeks exceeds the bounds of the presented Section 1782 petition.   (*See* docket #250 at 43.)   The Court reiterates its earlier holdings regarding the subpoenas issued by Judge Kane:

> In any event, as the Court described in its order denying the Republic of Ecuador's motion to quash, this Court is not inclined to reconsider Judge Kane's explicit determinations.   Judge Kane, although contemplating the filing of a motion to quash, clearly stated that Petitioner's "discovery requests do not attempt to circumvent foreign proof-gathering restrictions as they are a good-faith effort to obtain probative evidence, and discovery requested is not unduly burdensome as it goes to central issues in both foreign proceedings and would be permitted under the Federal Rules of Civil Procedure."   (Docket #22 at 6-7.)   Judge Kane's conclusion is law of this case, and the law of the case doctrine generally "dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case."   *Been v. O.K. Industries, Inc.*, 495 F.3d 1217, 1224 (10th Cir. 2007).   Judge Kane issued the subpoenas as designated at docket #5, without modification.

(Docket #154 at 9.)   This Court ordered production of documents responsive to the subpoenas issued by Judge Kane, permitted the Ecuadorian Plaintiffs to review the responsive documents for privilege and record any withholdings in a privilege log, and instructed Petitioner that it could file this motion to compel to challenge Plaintiffs' assertions of privilege.[11]   The key word is *responsive*.   Plaintiffs aver that Petitioner attempts to obtain documents recorded on the privilege log that are in excess of this Section 1782 proceeding, but if that were true, Plaintiffs should not have included such documents on the log at all.   The Court, as stated above, finds that waiver due to disclosure and the sword-shield doctrine precludes Plaintiffs' assertions of privilege and work product protection; however, the Court clarifies this order compelling

---

[11]Plaintiffs missed their chance to challenge the issuance of the subpoenas in toto.   (*See* Order at docket #154.)

production in that it applies only to documents responsive to the categories in the subpoenas issued by Judge Kane at the commencement of this Section 1782 proceeding.

## CONCLUSION

Accordingly, for the reasons stated above and the entire record herein, the Court **GRANTS** Petitioner Chevron Corporation's Motion to Compel Production of All Responsive Documents Withheld [filed September 20, 2010; docket #232]. All documents responsive to the categories in the Section 1782 subpoenas issued by Judge Kane shall be produced by the Stratus respondents and the Ecuadorian Plaintiffs to Petitioner on or before Tuesday, **October 5, 2010**.[12]

Dated this 1st day of October, 2010, in Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

---

[12]The Court recognizes that it orders a short time frame for production; however, as the parties have been instructed from the early stages of this proceeding, they must be prepared to produce all documents upon the Court's order. Moreover, in light of the privilege log and the time constraints addressed on the record during the September 24, 2010 status conference, it appears to the Court that responsive documents should be ready for production at this time.